# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT INDIANA

| | |
|---|---|
| THE ESTATE OF TANNER YEPSEN, KEITH YEPSEN, and LYNNETTE YEPSEN,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF CROWN POINT, PETE LAND AS CROWN POINT CHIEF OF POLICE, OFFICER SMULSKI, OFFICER WIDENER, OFFICER CAREY, and THE CROWN POINT POLICE DEPARTMENT,<br><br>Defendants. | CAUSE NO.: 2:18-CV-207 |

**OPINION AND ORDER**

The Plaintiffs in this cause, The Estate of Tanner Yepsen, and Tanner's parents, Keith and Lynnette Yepson, filed suit against the City of Crown Point, the Crown Point Chief of Police, and three Crown Point Police Officers, alleging violations of federal and state law in connection with Tanner's death by suicide on December 17, 2015. The Amended Complaint [ECF No. 3], initially filed in state court, alleges that the Defendants' actions resulted in a state-created danger in violation of Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Amended Complaint alleges that the City of Crown Point and Chief of Police are responsible under state law theories of negligence and respondeat superior. The Defendant removed the case to federal court and filed a Motion to Dismiss [ECF No. 8] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is fully briefed and ripe for consideration.

# COMPLAINT ALLEGATIONS

This case involves the suicide of eighteen-year-old Tanner Yepsen on December 17, 2015. On that date, Tanner called 911 and reported that he was having mental and emotional difficulties and was going to harm himself and others. In response, Crown Point Police officers arrived at the residence where Tanner lived with his parents. Officers met with Tanner near the street in front of his house. Additional officers met with Keith and Lynnette Yepsen inside their residence. During this conversation, the Yepsens informed officers that Tanner suffered from a mental condition and was taking prescription drugs. They also informed officers that guns were kept inside the residence. Shortly thereafter, the officers left the residence and the scene. They did not take any affirmative action to remove Tanner from the apartment complex, offer to take him for an evaluation, or remove the guns from the residence or otherwise ensure that the guns were secured and unavailable to Tanner.

After the officers left, Tanner reentered the residence, acquired more of his medication, and secured a handgun. A call to 911 was placed and multiple officers arrived at the scene. Tanner later died of a self-inflicted gun-shot wound.

With respect to their claim under 42 U.S.C. § 1983, the Plaintiffs allege that

> [t]he actions and inactions of the Defendants resulted in a violation of the 14th Amendment and resulted in a state created danger. The Officers actions, or inactions, which included arriving at the home and separating Tanner from his parents and then, leaving without taking any action created a danger, among other things by giving a false sense of resolution, that ultimately led to the wrongful death of Tanner Yepsen.

(Am. Compl. ¶ 27.)

## ANALYSIS

Under Rule 8's pleading requirements, a Plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2). To assure that a pleading suffices to give effective notice to the opposing party, a complaint must contain facts that are sufficient, when accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings that fail to meet this standard are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* 550 U.S. at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

### A. Section 1983 Due Process Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The Plaintiffs allege that the Defendants violated their constitutional due process rights. Nothing in the Due Process Clause requires the state to affirmatively protect people from harm by private actors. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (noting that the Due Process

Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security"). However, the *DeShaney* Court also recognized that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198. The Seventh Circuit has acknowledged two such "limited circumstances": "One exists if the state has a 'special relationship' with a person, that is, if the state has custody of a person, thus cutting off alternate avenues of aid. The other is the state-created danger exception." *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) (internal citations omitted).

The Plaintiffs in this action are relying on the state-created danger exception, which permits plaintiffs to state claims for civil rights violations if they "allege state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993). This exception consists of three elements: (1) the state, by its affirmative acts, created or increased a danger faced by an individual; (2) the state's failure to protect that individual from danger was the proximate cause of his injury; and (3) the state's failure to protect shocks the conscience. *Id.*

For example, in *Reed*, the police officer defendants arrested the driver of a car, but not the intoxicated passenger who was left in the car with the driver's car keys. The drunk passenger used the keys to drive away and crashed into the plaintiffs' car killing a pregnant woman and injuring five other passengers. 986 F.2d at 1123–24. Although the panel noted that "we have been hesitant to find § 1983 liability outside the custodial setting," it found that the officers in this case "initiated the state action" and that the "state intervention created the dangerous condition, a drunk driver on the road." *Id.* at 1126. Notably, had the complaint alleged that the

4

driver who the officers arrested and removed from the scene was also intoxicated, it would not have stated a claim for deprivation of constitutional rights under § 1983 because "exchanging one drunk driver for another" poses the "same danger." *Id.* at 1125. Under that scenario, "[t]he state action [would] not [have] place[d] individuals in a position of danger that otherwise they would not have faced." *Id.*

Turning to the allegations in this case, nothing suggests that the Defendants created the risk of suicide. That risk existed before police responded to the 911 call. Therefore, to satisfy the first element of the state-created danger exception, the factual allegations must plausibly suggest that the Defendants' actions increased the risk that Tanner would commit suicide. On that point, the Seventh Circuit has cautioned "that 'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect. If all that were required was a causal relation between inaction and harm, the rule of *DeShaney* would be undone." *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 599 (7th Cir. 2008).

The Seventh Circuit has had occasion to consider state-created danger cases involving suicide. For example, in *Collignon v. Milwaukee County*, 163 F.3d 982 (7th Cir. 1998), parents sought help from the police department after their twenty-eight–year–old son, who suffering from paranoid schizophrenia, left his parents' home unannounced. They told the officers about his mental health history and strange behavior. 163 F.3d at 985–86. The police found Collignon, took him into custody, and released him at 1:30 a.m. Later that day, Collignon left his parents' home again and this time committed suicide. *Id.* at 986. The parents sued under a state-created danger theory, alleging that although they informed the officers about Collignon's "bizarre behavior" and that he was "suicidal," and "requested that [he] be taken into custody immediately for the purpose of initiating emergency detention procedures," the officers released the decedent.

*Id.* at 991. The officers' conduct, the parents charged, "exposed [Collignon] to a greater risk of suicide" within the meaning of the state-created danger line of cases. *Id.* at 992.

The Seventh Circuit held that the parents had no viable due process claim. Relying on *DeShaney*, the court observed that:

> [A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. Thus, the plaintiffs cannot base their claims on the assertion that [the defendants] had an obligation to stop [the decedent] from committing suicide once he had been released from the jail. Similarly, the plaintiffs cannot claim that the . . . defendants should have involuntarily committed [the decedent] to a mental health facility: Due process protects people from being unlawfully restrained; it provides no right to be restrained, lawfully or otherwise.

*Id.* at 987 (internal quotation marks and citations omitted).

Under *Collignon*, the Plaintiffs cannot claim that the Defendants violated Tanner's substantive due process rights by allowing him to stay at his home in the care of his parents. (*See* Am. Compl. ¶ 16 (alleging that the Defendants "did not offer to take Tanner for help or evaluation of his mental condition"); *id.* ¶ 18 (complaining that the Defendants did not "remove Tanner Yepsen from the apartment complex").) The Plaintiffs assert that *Collignon* is distinguishable because it involved a detainee in the prison system. The Court does not agree that *Collignon* is distinguishable in this way. Collignon did not commit suicide while he was detained or otherwise restrained, but after he was released from police custody.

The Plaintiff also attempts to distinguish *Martin v. Shawano-Gresham School District*, 295 F.3d 701 (7th Cir 2002), another case involving suicide. The basis for the Plaintiffs' argument is not on point. The Plaintiff argues that the case is distinguishable because the court "relied on the fact that there was no evidence that the defendant had knowledge that the deceased previously attempted suicide," but here the Defendants had "culpable knowledge" as they "were called to the scene specifically as a result of a 911 call by Tanner stating that he was going to

6

harm himself." (Pl.'s Mem. in Resp. 3, ECF No. 12.) Contrary to the Plaintiff's argument, the court in *Martin* did not consider the defendant's awareness of the decedent's risk of harming herself as pertinent to the due process analysis. Instead, it held that "[t]he alleged knowledge of [the decedent's] fragile emotional state is irrelevant for purposes of the due process clause." 295 F.3d at 710.[1] This was so because, regardless of whether the defendants should have been on notice that the decedent was at risk to commit suicide when it suspended her from school,

> the Constitution does not require the school to act affirmatively in the ways the plaintiffs claim (providing her with counseling after school hours or keeping her at school after hours until her parents could pick her up), unless the state created or increased the danger in the first instance. Here the defendants did not create or increase the risk that [the decedent] would commit suicide, and therefore they did not have an affirmative obligation to protect [the decedent] after school hours.

*Id.* Likewise, here, the Amended Complaint focuses on affirmative actions that the Constitution did not require that the Defendants take, absent any affirmative acts by the Defendants that created or increased the risk that Tanner would commit suicide.

Even if the Court ignored the language of the Amended Complaint that, on its face, would preclude relief (*See* Am. Compl. ¶ 14 (alleging that officers left "[s]hortly after arriving and *taking no affirmative action*") (emphasis added)), the Court could not find that the pleading describes actions by the Defendants that placed Tanner in a position of greater danger than he already faced. *See Sandage*, 548 F.3d at 600 ("When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence."). The Plaintiffs speculate that Tanner's parents would have been aware of the continued need for involvement and prevented Tanner's suicide had the Defendants not given a false sense of

---

[1] Although the court noted that the knowledge of risk would be relevant to the deliberate indifference inquiry, the court did not reach that issue because it concluded that the defendants did not create or increase the risk of suicide. 295 F.3d at 710, n.10.

resolution by leaving the premises without providing additional assistance. The essence of the Plaintiff's claim—that the Defendants created a "false sense of resolution" by failing to take additional action—is not legally distinct from a failure to intervene, which is not actionable under the Due Process Clause. *See DeShaney*, 489 U.S. at 201; *Wilson-Trattner v. Campbell*, 863 F.3d 589, 594 (7th Cir. 2017) (rejecting as indistinguishable from *DeShaney* the plaintiff's claim that police officers' ineffectual response to domestic abuse increased the plaintiff's risk by "indirectly emboldening" the abuser "to continue to mistreat her"). Absent a level of speculation that is not tolerable under federal pleading standards, there is nothing to suggest that Tanner was in less danger before the Defendants responded to his 911 call. *Cf. Doe v. Vill, of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015) (finding no state-created danger where the court could only speculate whether the defendant made the plaintiff worse off). To find otherwise would be to interpret "create or increase . . . so broadly as to erase the distinction between endangering and failing to protect." *See Sandage*, 548 F.3d 599 (warning against such a construction).

For their § 1983 claim, the Plaintiffs do not plead facts that suggest "more than a sheer possibility," *Iqbal*, 556 U.S. at 678, that the Defendants acted unlawfully. The claim is, therefore, dismissed.

### B. State Law Claims

The City Defendants assert that the Federal Tort Claims Act provides them with immunity from the Plaintiffs' negligence claims. For their part, "the plaintiffs concede that the Indiana state claim[s] would be barred." (Pls.' Mem. 4.) Accordingly, the state law tort claims will be dismissed.

### C. Impact of Dismissal

The Plaintiffs no longer have a right to amend their pleading as a matter of course. *See* Fed. R. Civ. P. 15(a)(1) (providing for amendment as a matter of course within 21 days after service of the original pleading or 21 days after service of a motion under Rule 12(b)(6)). Ordinarily, when a court dismisses an original complaint under Rule 12(b)(6), the plaintiff should be given at least one opportunity to try to amend the complaint before the entire action is dismissed. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Although leave to amend should be freely given when justice so requires, *see* Fed. R. Civ. P. 15(a), and a court should generally grant leave to amend after granting a motion to dismiss, it need not grant leave when "it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion*, 786 F.3d at 519–20 (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)).

In this case, although it is unclear what repleading would accomplish—the Defendants' actions will presumably not change—the Court will not conduct a futility analysis unless it becomes appropriate in the context of the Plaintiffs seeking leave to amend under Rule 15(a)(2).

### CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants' Motion to Dismiss [ECF No. 8]. Any motion for leave to amend the complaint is to be filed by January 15, 2019. If no motion is filed by that date, the Clerk will be directed to enter judgment and close this case.

SO ORDERED on December 13, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT